Beloit Liquidating Trust, a Delaware Trust,
Plaintiff-Appellant,

v.

Jeffrey T. Grade, Francis M. Corby, Jr., Mark E.
Readinger, James A. Chokey, Robert A. Messier,
Alton L. Daffin, and Thomas E. Engelsman,
Defendants-Respondents-Petitioners.

Supreme Court

*No. 02–2035. Oral argument February 19, 2004.—
Decided April 6, 2004.*

2004 WI 39

(Also reported in 677 N.W.2d 298.)

356

357

For the defendant-respondent-petitioner Engels-man there were briefs by *Gregory A. Kotsonis* and *VonBriesen & Roper, S.C.,* Milwaukee and *Mitchell Bryan* and *Levenfeld Pearlstein,* Chicago, and oral argument by *Mitchell Bryan.*

For the defendants-respondents-petitioners Chokey, Readinger, Messier & Daffin there were briefs by *Paul F. Linn, Christopher C. Mohrman, Charles J. Crueger,* and *Michael Best & Friedrich, LLP,* Milwaukee, and oral argument by *Paul F. Linn.*

For the defendants-respondents-petitioners Grade and Corby there was a brief by *Christopher T. Hale, K. Scott Wagner* and *Hale & Wagner, S.C.,* Milwaukee.

For the plaintiff-appellant there were briefs by *John F. Hovel, Leonard G. Leverson* and *Kravit, Gass, Hovel & Leitner, S.C.,* Milwaukee, and *Curtis C. Mechling* and *Stroock & Stroock & Lavan, LLP,* New York, and oral argument by *Curtis C. Mechling.*

¶ 1. N. PATRICK CROOKS, J.  The petitioners in this case, Jeffrey T. Grade, Francis M. Corby, Jr., Mark E. Readinger, James A. Chokey, Robert A. Messier, Alton L. Daffin, and Thomas E. Engelsman, officers and

directors of Beloit Corporation, or its former parent corporation, Harnischfeger Industries, Incorporated (Harnischfeger), seek review of a published court of appeals' decision, *Beloit Liquidating Trust v. Grade*, 2003 WI App 176, 266 Wis. 2d 388, 669 N.W.2d 232, reversing a circuit court decision. The court of appeals held that the petitioners (officers and directors) had a duty to Beloit Corporation's creditors before it went out of business. The circuit court dismissed the supplemental complaint filed by Beloit Corporation Liquidating Trust (Trust), which alleged that the officers and directors breached their fiduciary duties. The circuit court held that no duty is owed to the creditors of a corporation unless the corporation is both insolvent and no longer a going concern. The court of appeals reversed the circuit court, concluding that the officers and directors had a duty to the creditors before Beloit Corporation went out of business. The court of appeals further concluded that Delaware, not Wisconsin, law was applicable to the present case. The court of appeals also held that the petitioners were precluded from asserting 11 U.S.C. § 108(a) (1999)[1] as a defense, and the Official Committee of Unsecured Creditors of Beloit

---

[1] Unless otherwise indicated, all references to United States Code are to the 1999 edition. In relevant part, 11 U.S.C. § 108(a) states:

> If applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor may commence an action, and such period has not expired before the date of the filing of the petition, the trustee may commence . . . only before the later of —
>
> (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
>
> (2) two years after the order for relief.

Corporation (Committee) could use § 108(a) to extend the statute of limitations for its breach of fiduciary duty claims.

¶ 2.    We conclude that, given the legislature's enactment of Wis. Stat. § 180.1704 (1999–2000)[2] and the prevailing Wisconsin case law regarding choice of law, Wisconsin law applies in this case. Primarily relying on the decisions of *Boyd v. Mutual Fire Ass'n,* 116 Wis. 155, 90 N.W. 1086 (1902), and *McGivern v. Amasa Lumber Co.,* 77 Wis. 2d 241, 252 N.W.2d 371 (1977), we further conclude that, in order for officers and directors to have a fiduciary duty to creditors, a corporation must be both insolvent and no longer a going concern. Because Beloit Corporation was a going concern during the applicable two-year period in which a claim could have been brought, we conclude that its officers and directors owed no duty to its creditors during that time. Given these conclusions, we do not need to address the court of appeals' holding regarding issue preclusion in this case.

I

¶ 3.    For approximately 140 years, Beloit Corporation designed and manufactured pulp and papermaking machines. Beloit Corporation was a profitable corporation for many of those years and reported an operating income of over $65 million as late as 1995. Although Beloit Corporation was organized under the laws of Delaware, its primary place of business was located in

---

[2] Unless otherwise indicated, all references to Wisconsin Statutes are to the 1999–2000 edition. In relevant part, Wis. Stat. § 180.1704 states: "(T)his chapter applies to all foreign corporations transacting business in this state on or after January 1, 1991."

Beloit, Wisconsin. Beloit Corporation also operated 65 wholly-owned or partially-owned subsidiaries, including subsidiaries located in the United Kingdom, Asia, Italy, Poland, and Austria. Harnischfeger was organized under Delaware law as well, and its principal place of business was in Milwaukee County, Wisconsin. Harnischfeger owned 80 percent of Beloit Corporation, while Mitsubishi Heavy Industries owned the remaining 20 percent of the corporation.

¶ 4. On June 7, 1999, Harnischfeger, Beloit Corporation, and all of the other businesses owned by Harnischfeger filed for bankruptcy protection in Delaware under Chapter 11 of the United States Code.[3] At the time of filing, Beloit Corporation's reported liabilities exceeded its reported assets by more than $1 billion. While bankruptcy proceedings were pending, the bankruptcy court appointed the Committee to explore potential conflicts of interest between debtors and related parties. The Committee then sought the right to sue, on behalf of Beloit Corporation, the current and former officers and directors of Beloit Corporation and Harnischfeger for their alleged mismanagement of Beloit Corporation and breach of fiduciary duty.

¶ 5. The bankruptcy court confirmed Beloit Corporation's reorganization plan on May 18, 2001. According to the plan, Beloit Corporation's unsecured creditors were given the right to share in the proceeds resulting from the liquidation of Beloit Corporation's assets. The unsecured creditors were also given title to Beloit Corporation's potential claims, including the claims of Beloit Corporation asserted in this action. On June 5, 2001, the bankruptcy court permitted Beloit

---

[3] After emerging from bankruptcy, Harnischfeger changed its name to Joy Global, Incorporated.

Corporation's unsecured creditors to initiate this action. On June 7, 2001, the Committee commenced this action in Milwaukee County Circuit Court.

¶ 6.   On July 12, 2001, the Trust was created to liquidate Beloit Corporation's remaining assets. The Trust filed a supplemental complaint, in which the Trust was substituted as the plaintiff in this action in place of the Committee. Aside from general claims of mismanagement and corporate waste, the Trust cited two major events as contributing to the demise of Beloit Corporation. First, the Trust alleged in its complaint that the directors and officers breached their duties in 1994 by entering into a contract to build a de-inking and pulping mill in Fitchburg, Massachusetts. According to the Trust, Beloit Corporation never fulfilled its contractual obligations to the mill. The mill closed two years later, and its owner filed bankruptcy. The directors and officers of Beloit Corporation decided that, instead of forfeiting their sizeable investment, they would take over the mill and resume its operation. Beloit Corporation assumed the mill's lease obligations, and the corporation invested more money in the project. The mill continued to sustain substantial losses, and the bankruptcy court authorized Beloit Corporation to cease the mill's operations in July 1999.

¶ 7.   The second event cited by the Trust as leading to the demise of Beloit Corporation occurred in 1996. The officers and directors concluded that, in order for Beloit Corporation to regain some of its market share, it needed to expand its business dealings abroad. Thus, Beloit Corporation, through its wholly-owned subsidiary, Beloit Corporation Asia Pacific, Incorporated, entered into two contracts with Asia Pulp and Paper Company (Asia Pulp), the largest Indonesian pulp and paper producer, to build and install two large

fine paper machines in Indonesia. The complaint alleged that there were substantial cost overruns on these first two contracts because the officers and directors miscalculated various start-up and construction costs.

¶ 8. Beloit Corporation then decided to enter into two more contracts with Asia Pulp. However, due to its dissatisfaction with Beloit Corporation's performance on the first two contracts, Asia Pulp ultimately cancelled the second two contracts at a substantial loss to Beloit Corporation. The Trust alleged that the decision of the officers and directors to enter into these contracts resulted in a breach of the officers' and directors' fiduciary duties. The Trust further alleged that the officers and directors attempted to conceal the losses from the Asia Pulp contracts. The complaint acknowledged, however, that losses incurred from those contracts were disclosed on Beloit Corporation's March 1998 financial statements.

¶ 9. The Trust further alleged that, beginning in 1996, the officers and directors should have managed Beloit Corporation for the benefit of the unsecured creditors. The complaint alleges that Beloit Corporation was rapidly losing its market share in 1995. The complaint alleged that, by early 1996, Beloit Corporation was able to pay its outstanding debt only by virtue of hundreds of millions of dollars in loans from Harnischfeger. According to the complaint, Beloit Corporation was continuously insolvent as early as 1996. From 1995 to 1999, the officers and directors allegedly mismanaged Beloit Corporation and drove it further into insolvency by negligently entering into contracts the corporation was incapable of performing.

¶ 10. The Trust asserted that the officers and directors breached their fiduciary duties to Beloit Corporation and its creditors. The complaint alleged that,

364

during the time when Beloit Corporation was insolvent or near insolvency, the directors and officers negligently allowed the corporation to enter into money-losing contracts, failed to keep adequate accounting systems to deal with the losses, continued operations after prudent managers would have shut the corporation down, and failed to disclose the corporation's losses.

¶ 11. The officers and directors answered the Trust's complaint and moved for judgment on the pleadings.[4] Their motion alleged that the creditors' breach of fiduciary duties claims failed to state claims upon which relief could be granted because no fiduciary duty was owed to the creditors. The motion further stated that both Beloit Corporation's and the creditors' breach of fiduciary duties claims were time-barred under the two-year statute of limitations set forth in Wis. Stat. § 893.57.

¶ 12. Judge Timothy G. Dugan, Milwaukee County Circuit Court, granted the officers' and directors' motion for judgment on the pleadings and dismissed the creditors' breach of fiduciary duty claims with prejudice.[5] The circuit court concluded that the creditors' claims should be separated from the

---

[4] Only Chokey, Readinger, Messier, and Daffin filed the motion for judgment on the pleadings with the circuit court.

[5] The parties in this case ultimately entered into a stipulation dismissing the Trust's fourth and fifth claims, which alleged that the officers and directors conspired to commit a fraudulent conveyance, and which sought to declare that any officer release of liability was null and void, respectively. The stipulation and order stated that the claims were dismissed without prejudice. Moreover, the Trust was not permitted to reassert its fourth and fifth claims until the date of the ultimate disposition of any appeal. As these claims are not material to this appeal, we decline to further address them in this opinion.

corporation's claims for purposes of analysis. With respect to the creditors' claims, the circuit court concluded that the breach of fiduciary duty claims alleged in the complaint were governed by Wisconsin law. The circuit court also stated that the officers and directors of an ongoing entity owed no duty to its creditors. Thus, because Beloit Corporation was an ongoing corporation at the times relevant to this case, the officers and directors owed no duty to the creditors. Moreover, the circuit court noted that the creditors' claims were derivative of the corporation's claims. Thus, if the corporation was barred from asserting certain claims, the creditors were equally limited by such restrictions.

¶ 13. With respect to the corporation's claims, the circuit court dismissed the creditors' breach of fiduciary duty claims because the statute of limitations had expired. The court concluded that the statute of limitations in Wis. Stat. § 893.57[6] regarding intentional torts was applicable in this case. Citing the *Boyd* case, the court rejected the Trust's assertion that the adverse domination doctrine[7] extended the applicable window of time through the June 1999 bankruptcy filing. The

---

[6] Wisconsin Stat. § 893.57 states in relevant part: "An action to recover damages for libel, slander, assault, battery, invasion of privacy, false imprisonment or other intentional tort to the person shall be commenced within 2 years after the cause of action accrues or be barred."

[7] The adverse domination doctrine involves an equitable principle to the effect that the statute of limitations on a breach of fiduciary duty claim against officers and directors is tolled as long as a corporate plaintiff is controlled by the alleged wrongdoers. The statute is tolled until a majority of the disinterested directors discover or are put on notice of the claim against the wrongdoers. This doctrine is available to benefit only the corporation. *Black's Law Dictionary* 54 (7th ed. 1999).

court asserted that the two-year extension permitted in 11 U.S.C. § 108(a) could not be used to toll the statute of limitations, as only a trustee or a debtor-in-possession had standing to assert § 108(a). The court noted that, when the bankruptcy court confirmed the plan of reorganization on May 18, 2001, Beloit Corporation ceased to be a debtor-in-possession, and its assets revested with Beloit Corporation until the Trust was formed in July. Thus, the circuit court reasoned, no one could take advantage of § 108(a).

¶ 14. A divided court of appeals reversed the circuit court's decision. The court of appeals, Judges Ralph Adam Fine and Charles B. Schudson, concluded that, under *McGivern* and other Wisconsin case law, officers and directors of an insolvent corporation have a duty to its creditors prior to the time the corporation actually goes out of business. *Beloit,* 266 Wis. 2d 388, ¶ 41. In analyzing the claims, the court of appeals did not separate the corporation's claims from the creditors' claims. Relying on the internal affairs doctrine[8] and the factors outlined in *Heath v. Zellmer,* 35 Wis. 2d 578, 151 N.W.2d 664 (Ct. App. 1967), the court of appeals concluded that Delaware law applied in this case. Moreover, the court of appeals sua sponte concluded that issue preclusion barred the defendants from raising a defense under 11 U.S.C. § 108(a). The court stated that the creditors' committee that originally filed this action could use § 108(a), because Beloit Corporation remained a debtor-in-possession until the reorganization plan went into effect. Thus, the court reasoned that the

[8] The internal affairs doctrine is a conflict of laws rule that states that in disputes involving a corporation and its relationships with its shareholders, directors, officers, or agents, the law to be applied is the law of the state of incorporation. *Black's Law Dictionary* 820 (7th ed. 1999).

breach of fiduciary duty claims were timely under a two-year statute of limitations. The court concluded that § 108(a) extended the applicable statute of limitations to June 7, 2001, the second anniversary of Beloit Corporation's bankruptcy filing. The court noted that, because the Trust's complaint alleged that the officers and directors breached their fiduciary duties within two years preceding the 1999 bankruptcy filing, the claims were brought within the time period proscribed by the applicable statute of limitations.

¶ 15. In his dissent, Judge Ted E. Wedemeyer, Jr. stated that he would affirm the circuit court's holding that officers and directors of a corporation have a duty to creditors only when the corporation is both insolvent and no longer a going concern. The dissent noted that, although the majority relied on the internal affairs doctrine, no controlling Wisconsin law had adopted this doctrine. Given that Wis. Stat. § 180.1704 applies to all foreign corporations transacting business in Wisconsin, the dissent concluded that Wisconsin corporate law governed Beloit Corporation's activities.

¶ 16. In response to the court of appeals' decision, the officers and directors filed a motion for reconsideration. The court of appeals' majority denied the defendants' motion and slightly amended ¶ 9 of its decision, stating that the court based its decision on federal bankruptcy law. Thus, the court of appeals reasoned, it did not have to decide the issue of whether the discovery rule set forth in *Hansen v. A.H. Robins, Inc.*, 113 Wis. 2d 550, 335 N.W.2d 578 (1983), the non-corporate

analog to the adverse domination doctrine,[9] was applicable or which state statute of limitation was applicable.

## II

¶ 17. We now consider which state's laws apply to the issues in this case, and whether the officers and directors of Beloit Corporation owed a duty to its creditors. Procedurally, this case centers on whether the circuit court appropriately granted judgment on the pleadings to the officers and directors. The issue of whether a complaint states a claim is a question of law, and we review the matter de novo. *Watts v. Watts,* 137 Wis. 2d 506 512, 405 N.W.2d 303 (1987). A motion to dismiss a complaint for failure to state a claim upon which relief can be granted tests the legal sufficiency of the complaint. *Id.* All facts pleaded and reasonable inferences that may be drawn from such facts are accepted as true, but only for purposes of testing the complaint's legal sufficiency. *Id.; State v. Mauthe,* 123 Wis. 2d 288, 292, 366 N.W.2d 871 (1985). Nevertheless, legal inferences and unreasonable inferences need not be accepted as true. *Morgan v. Pa. Gen. Ins. Co.,* 87 Wis. 2d 723, 731, 275 N.W.2d 660 (1979). A complaint should not be dismissed as legally insufficient unless it appears certain that a plaintiff cannot recover under any circumstances. *Watts,* 137 Wis. 2d at 512; *Morgan,* 87 Wis. 2d at 731.

---

[9] In *Hansen v. A.H. Robins, Inc.,* 113 Wis. 2d 550, 560, 335 N.W.2d 578 (1983), we adopted the discovery rule for all tort actions other than those governed by a statute. We stated that "(s)uch tort claims shall accrue on the date the injury is discovered or with reasonable diligence should be discovered, whichever occurs first."

¶ 18. The officers and directors[10] assert that they did not owe a fiduciary duty to Beloit Corporation's creditors. The officers and directors contend that, given Wis. Stat. § 180.1704, Wisconsin law is applicable to the issues in this case. The officers and directors point out that Wisconsin has never adopted the internal affairs doctrine. Moreover, they contend that application of Wisconsin's choice of law principles clearly show that Wisconsin law is applicable. Under Wisconsin law, as explained in cases such as *McGivern* and *Boyd,* the officers and directors assert that they owe no duty to creditors unless the corporation is both insolvent and no longer a going concern. They state that the definition of insolvency found in *Schmitz v. Wisconsin Soap Mfg. Co.,* 204 Wis. 149, 235 N.W. 409 (1931), should be used, because it allows for directors to take calculated business risks without having to change their strategies to protect creditors from month to month, simply because the corporation appears short on cash. The officers and directors contend that the facts alleged in the Trust's complaint prove that Beloit Corporation was a going concern because it was entering into contracts directly related to its product.

¶ 19. The officers and directors further assert that the Trust's claims are time-barred. According to them, the statute of limitations found in Wis. Stat. § 893.57 applies to both Beloit Corporation's and the creditors' breach of fiduciary duties claims. The officers and directors note that, since this action was filed on June 5, 2001, the claims are time-barred because the complaint alleges that all of the instances of breaches of

---

[10] Chokey, Readinger, Messier, and Daffin filed a brief for the petitioners, which Grade and Corby joined in its entirety. Engelsman also adopted his co-petitioners arguments but filed an additional brief regarding the question of issue preclusion.

fiduciary duties accrued before June 5, 1999. Further, they claim that 11 U.S.C. § 108(a) is inapplicable to the present case, as only trustees or debtors-in-possession may use § 108(a) to extend a statute of limitations. Because the Trust is a creditors' committee, and not a trustee or debtor-in-possession, the officers and directors contend that the Trust does not have the power to toll the statute of limitations under § 108(a). As further evidence of § 108(a)'s inapplicability, the officers and directors contend that the Bankruptcy Code does not contain a plain statement that unsecured creditors' committees may take advantage of the provision. They note that Beloit Corporation itself was no longer a debtor-in-possession after the bankruptcy plan was confirmed. Finally, the officers and directors assert that the theory of adverse domination does not toll the claims of Beloit Corporation or its creditors. The petitioners contend that adverse domination would apply to Beloit Corporation's claims only, not its creditors. According to the petitioners, Wisconsin rejected the adverse domination doctrine in *Boyd,* and *Hansen's* discovery rule did not overrule this holding.[11]

¶ 20. According to the Trust, officers and directors owe a fiduciary duty to creditors when a corporation is in the vicinity of insolvency, regardless of whether Wisconsin or Delaware law is applicable. Nevertheless, the Trust asserts that the laws of Delaware should govern this case. The Trust rejects the officers' and directors' argument that Wisconsin law should apply, given Wisconsin choice of law principles. The Trust argues that if Wisconsin law is held to be appli-

---

[11] The officers and directors also included arguments regarding issue preclusion. Because we do not discuss this issue in this opinion, those arguments have been omitted.

cable simply because Beloit Corporation had more significant contacts with Wisconsin, and the acts complained of occurred in this state, the laws governing officers and directors would vary in each individual case, according to where the relevant events occurred.

¶ 21.   The Trust contends that application of the internal affairs doctrine would prevent such inconsistencies and protect parties' expectations. The Trust rejects the argument that Wis. Stat. § 180.1704 supplants the internal affairs doctrine and contends that, even applying Wisconsin choice of law principles, Delaware law is applicable. According to the Trust, Delaware has a significant interest in regulating the directors and officers of companies incorporated within its state. The Trust notes that Delaware law states that directors and officers owe a fiduciary duty to creditors before the corporation goes out of business. Under Delaware case law, the Trust asserts that such duty arises when a corporation is in the vicinity of insolvency. Moreover, even if this court concludes that Wisconsin law is applicable, the Trust contends that Wisconsin does not require that a corporation be both insolvent and no longer a going concern before a duty is owed to its creditors.

¶ 22.   The Trust further asserts that the creditors' committee had the benefit of 11 U.S.C. § 108(a) because it brought this action on behalf of Beloit Corporation. The Trust rejects the defendants' contention that Beloit Corporation ceased to be a debtor-in-possession after the bankruptcy court confirmed the reorganization plan. Moreover, the Trust contends that its breach of fiduciary duty claims are governed by the six-year

statute of limitations found in Wis. Stat. § 893.53.[12] The statute of limitations, the Trust contends, was tolled by either the adverse domination doctrine or the discovery rule set forth in *Hansen*.[13]

¶ 23. First, we must resolve the choice of law issue presented in this case. We begin our analysis by examining Wis. Stat. § 180.1704, which states, in relevant part, that Chapter 180, which governs Wisconsin's business corporations, "applies to all foreign corporations transacting business in this state." Although the court of appeals' majority opinion rejected § 180.1704's application to the circumstances presented in this case,[14] we find the plain language of § 180.1704 helpful in discerning our legislature's intent with respect to corporations and choice of law principles. Section 180.1704 puts all corporations on notice that, when transacting business in Wisconsin, they are subject to Chapter 180. Given this clear statutory language,

---

[12] Wisconsin Stat. § 893.53 states in relevant part: "An action to recover damages for an injury to the character or rights of another, not arising on contract, shall be commenced within 6 years after the cause of action accrues, except where a different period is expressly prescribed, or be barred."

[13] The Trust also included arguments regarding issue preclusion. Because we do not discuss this issue in this opinion, those arguments have been omitted.

[14] The court of appeals' majority stated that, except for Wis. Stat. §§ 180.0740–180.0747 regarding shareholder derivative actions, provisions regulating the liability of officers and directors for breach of fiduciary duty to a corporation were absent from Chapter 180. The court of appeals' majority further stated that, under §§ 180.0740–180.0747, the laws of the state of incorporation are applicable. *Beloit Liquidating Trust v. Grade*, 2003 WI App 176, ¶ 33, 266 Wis. 2d 388, 669 N.W.2d 232.

and Wisconsin's failure to adopt the internal affairs doctrine, either by statute or through case law, we conclude that the language of § 180.1704 supports the holding that Wisconsin law should be applied in determining whether the directors or offices breached their fiduciary duty to Beloit Corporation's creditors.

■

¶ 24. The application of Wisconsin law to this case is further supported by the choice of law principles articulated in Wisconsin's case law. In *American Standard Ins. Co. v. Cleveland,* 124 Wis. 2d 258, 263, 369 N.W.2d 168 (Ct. App. 1985), the court of appeals noted that there are two applicable tests when deciding which forum's laws apply. First, we must judge "whether the contacts of one state to the facts of the case are so obviously limited and minimal that application of that state's law constitutes officious intermeddling." *Id.* (citing *Gavers v. Fed. Life Ins. Co.,* 118 Wis. 2d 113, 115–16, 345 N.W.2d 900 (Ct. App. 1984)). In deciding whether application of Delaware laws would constitute officious intermeddling, we are required to look at Beloit Corporation's contacts with both Delaware and Wisconsin. While Beloit Corporation was incorporated under Delaware laws and filed bankruptcy in Delaware, that comprised the extent of Beloit Corporation's contact with Delaware. In contrast, Beloit Corporation's contacts with Wisconsin exceeded its isolated interaction with Delaware. Beloit Corporation's principal place of business was located in Wisconsin for 140 years. The majority owner of Beloit Corporation's stock, Harnischfeger, was also headquartered in Wisconsin. Moreover, every officer and director named in this case worked in Wisconsin for either Beloit Corporation or Harnischfeger, and the alleged breaches of fiduciary duty occurred within Wisconsin. After considering

these factors, we conclude that application of Delaware law in this case would constitute officious intermeddling with the laws of Wisconsin.

■

¶ 25. The second test involves examining the choice of law factors set forth in *Heath*[15] *See Am. Standard,* 124 Wis. 2d at 263. In *Heath,* we listed five factors and concluded that they should be considered when taking into account choice of law considerations, regardless of the precise area of law involved. *Heath,* 35 Wis. 2d at 596. *See also Zelinger v. State Sand and Gravel Co.,* 38 Wis. 2d 98, 106, 156 N.W.2d 466 (1968). Such factors to be considered are (1) predictability of results; (2) maintenance of interstate and international order; (3) simplification of the judicial task; (4) advancement of the forum's governmental interests; and (5) application of the better rule of law. *Heath,* 35 Wis. 2d at 596. *See State Farm Mut. Auto. Ins. Co. v. Gillette,* 2002 WI 31, ¶ 53, 251 Wis. 2d 561, 641 N.W.2d 662. The importance of each factor will vary depending upon the specific facts presented in each case. *Zelinger,* 38 Wis. 2d at 106. We now discuss each of these factors as it relates to the present case.

¶ 26. With respect to the predictability factor, the court of appeals' majority opinion noted the numerous places, both domestic and foreign, where Beloit Corporation conducted business and cited *Heath* for the proposition that parties entering into a legal relationship need to "know that their rights will be the same, irrespective of the forum." *Beloit,* 266 Wis. 2d 388,

---

[15] The factors set forth in *Heath v. Zellmer,* 35 Wis. 2d 578, 595, 151 N.W.2d 664 (Ct. App. 1967) were suggested by Robert A. Leflar in his article, *Choice-Influencing Considerations in Conflicts Law,* 41 N.Y.U. L. Rev. 267 (1966).

¶¶ 31–32 (quoting *Heath*, 35 Wis. 2d at 596). *See also State Farm*, 251 Wis. 2d 561, ¶ 53. Wisconsin Stat. § 180.1704 is clear on its face and puts corporations on notice that, if they choose to transact business in this state, they will be subject to Wisconsin law. Thus, we conclude that applying Wisconsin law to the present case will enhance predictability of results for corporations doing business in this state.

¶ 27. Moreover, the maintenance of interstate order will be retained by applying Wisconsin law to this case. In *Heath*, we noted that "(d)eference to the substantial interests of another state are necessary and for a state that is only minimally concerned with a transaction or tort to thrust its law upon the parties would be disruptive of the comity between states." *Heath*, 35 Wis. 2d at 596. *See State Farm*, 251 Wis. 2d 561, ¶ 55. Beloit Corporation's principal place of business was in Wisconsin for over 140 years. Although Beloit Corporation was incorporated and filed bankruptcy in Delaware, its contacts with Delaware end there. Certainly, Beloit Corporation has had more substantial contacts with Wisconsin in carrying out its routine business transactions for 140 years, and Wis. Stat. § 180.1704 leads to the conclusion that such contact is sufficient to render Wisconsin law applicable here.

¶ 28. Simplification of the judicial task means that a " 'simple and easily applied rule of substantive or procedural law is to be preferred.' " *Id.*, ¶ 59 (citation omitted). In *Heath*, we noted that "a court's task is rarely simplified when the lawyers and judges must apply themselves to foreign rather than forum law." *Heath*, 35 Wis. 2d at 597. Wisconsin law regarding whether officers and directors owe a fiduciary duty to a corporation's creditors is not complex or unmanageable.

Thus, application of Wisconsin law in this case will simplify our task of reaching a decision in this case.

¶ 29.  Further, this state's governmental interests will be advanced by applying Wisconsin law. In *Heath,* we stated the following:

> (E)ven when we are confronted with the law of another jurisdiction and that jurisdiction is admittedly a "concerned jurisdiction" as determined by our analysis of relevant contacts, forum law should continue to be a primary concern of the forum court for "Courts are instruments of state policy . . . ," and it is the duty of a Wisconsin court to identify and effectuate Wisconsin policies.

*Id.* (citation omitted). *See also Hunker v. Royal Indem. Co.,* 57 Wis. 2d 588, 603, 204 N.W.2d 897 (1973).

¶ 30.  We further noted that "(i)f it appears that the application of forum law will advance the governmental interest of the forum state, this becomes a major, though not in itself a determining, factor in the ultimate choice of law." *Heath,* 35 Wis. 2d at 598. Certainly, as evidenced by the enactment of Wis. Stat. § 180.1704, Wisconsin has an interest in having its laws applied to corporations, and their officers and directors, transacting business within the state.

██

¶ 31.  Finally, Wisconsin law regarding liability to creditors is the better law and should be applied in this case. "(C)ourts will select the law that most adequately does justice to the parties and has the greatest likelihood of being applicable with justness in the future." *Id.* Wisconsin laws regarding a corporation's duty to its creditors are not obsolete or senseless, as contemplated by *Heath.* Since Beloit Corporation's activities that are the subject of this case primarily occurred in Wisconsin, it makes sense to apply the laws of this state.

¶ 32.    Based on the abovementioned factors, we conclude that Wisconsin law is applicable in this case. We note that, although Beloit Corporation had contact with Delaware for both its incorporation and its bankruptcy, the continuous nature of the contacts of Beloit Corporation and its officers and directors with Wisconsin for the duration of its 140–year business outweigh any interests supporting the application of Delaware law to this case.

¶ 33.    We further conclude that Wisconsin law regarding fiduciary duties to creditors governs this case as well. The Trust contends that *Hinz v. Van Dusen,* 95 Wis. 503, 70 N.W. 657 (1897), stands for the proposition that there is no requirement that a corporation must no longer be a going concern, in order for it to be declared insolvent. The Trust cites the following language in support of this argument:

> It is when a corporation ceases to be a going institution, or its business is in such shape that its directors know, or ought to know, that suspension is impending, that its assets in the hands of such directors become, by equitable conversion, a trust fund for the benefit of its general creditors . . . .

*Id.* at 508.

¶ 34.    Nevertheless, we conclude that the Trust's argument misses its mark, as subsequent cases interpreting and applying our *Hinz* decision clearly contemplate that a corporation must be both insolvent and no longer a going concern before a duty is owed to the corporation's creditors. In *Hamilton v. Menominee Falls Quarry Co.,* 106 Wis. 352, 81 N.W. 876 (1900), this court stated the following:

> It is now settled in this state, as the result of a series of decisions, that the directors of a going corporation are in no sense trustees for the corporate creditors in the management of the corporate business, even though the corporation be insolvent; and that it is only when the corporation ceases to be a going concern, or the situation is such that its directors know, or ought to know, that suspension is impending, that its assets become a trust fund, so that directors may not prefer themselves over general creditors . . . .

*Id.* at 360 (citing *Hinz,* 95 Wis. at 508).

¶ 35.   Moreover, in *Slack v. Northwestern National Bank of Superior,* 103 Wis. 57, 79 N.W. 51 (1899), this court stated:

> It has been held by this court in a number of cases that when a corporation is insolvent and has ceased to be a going concern, and its officers know, or ought to know, that suspension is impending, then such officers are so far trustees that they may not transfer corporate property to themselves in payment of debts due them, and that such a transfer constitutes a fraud in law.

*Id.* at 64 (citing *Hinz,* 95 Wis. at 508). *See also Killen v. Barnes,* 106 Wis. 546, 564, 82 N.W. 536 (1900).

¶ 36.   Our decision in *Boyd* further supports the notion that a duty is owed to a corporation's creditors only when the corporation is insolvent and no longer a going concern. In *Boyd,* creditors brought suit against an insolvent corporation to wind up its affairs after the officers and directors of such corporation grossly mismanaged its financial affairs. *Boyd,* 116 Wis. at 165–66. We noted that "the managing officers of a corporation are at all times trustees for the corporation and its stockholders, and also for the creditors after the corporation is adjudged insolvent." *Id.* at 173. This court

granted a rehearing in the case to determine whether the statute of limitations had run in favor of the officers and directors. In this court's second opinion in *Boyd,* we noted that our previous opinion did not hold that officers and directors of a corporation that remained a going concern were trustees of its creditors. *Id.* at 178. We further explained that "(n)either the corporation nor its governing body, so long as it is a going concern, holds its property in trust for creditors." *Id.* at 181.

¶ 37.   While the abovementioned cases discussed whether officers and directors were trustees or held property in trust for the creditors when the corporation was still a going concern, we conclude that the reasoning in such cases is equally applicable to determining whether a fiduciary duty is owed to such creditors. We disagree with the court of appeals' conclusion that "*Boyd* and the cases upon which it relied merely recognized that Wisconsin law would not impose a trust on the property of a corporation that, although financially distressed, was still 'a going concern.' " *Beloit,* 266 Wis. 2d 388, ¶ 41 n.7 (quoting *Boyd,* 116 Wis. at 170–74). Having the benefit of previous case analyses, it seems clear that a fiduciary duty on the part of officers and directors is owed to a corporation's creditors, only after the corporation is both insolvent and no longer a going concern.

¶ 38.   Our decision in *McGivern* further solidified this conclusion based on this line of cases by holding that officers and directors owe no fiduciary duty to creditors, unless the corporation is insolvent and no longer a going concern. In *McGivern,* a creditor sued, among others, the former president of a corporation to which she had loaned a total of $67,000. *McGivern,* 77 Wis. 2d at 249. The corporation ultimately went out of

business and failed to repay the creditor. *Id.* However, during the time the former president was associated with the corporation, it remained solvent and a going concern. *Id.* at 250.

¶ 39. We noted that, while "some have viewed officers and directors of a solvent corporation as trustees or agents for creditors of the corporation, this court has not adopted this view." *Id.* at 253. Although we noted that language in *Haywood v. Lincoln Lumber Co.,* 64 Wis. 639, 26 N.W. 184 (1885) could be interpreted as supporting a fiduciary relationship between officers and directors and creditors generally, regardless of the solvency status of the corporation, we concluded that our "(d)ecisions after *Haywood* have moved away from the concept of a director's fiduciary duty to creditors except perhaps where the corporation was insolvent[16] and no longer a going concern." *McGivern,* 77 Wis. 2d at 255 (citing *Killen,* 106 Wis. at 564; *Boyd,* 116 Wis. at 181; and *Schmitz,* 204 Wis. at 154). *See also Malloy v. Korf,* 352 F.Supp. 569, 572 (E.D. Wis. 1972). Thus, our

---

[16] This court defined insolvency in *Schmitz.* We noted that insolvency

> does not mean the inability of the concern or person giving the alleged preference to meet current obligations as they become due in the regular course of business. Neither does it mean that the company or person is presently operating its business at a loss. *It simply means that the assets of the alleged insolvent are insufficient, at a fair valuation, to pay his debts.*

*Schmitz v. Wis. Soap Mfg. Co.,* 204 Wis. 149, 153, 235 N.W. 409 (1931) (emphasis added). *McGivern* relied on this definition of insolvency provided in *Schmitz.* We reaffirm that this is the appropriate test for insolvency, as it permits officers and directors of a corporation sufficient latitude to take calculated business risks.

conclusion in *McGivern* was consistent with our decisions in *Boyd* and other cases discussing the duties of officers and directors to the corporation's creditors.

¶ 40. Here, we hold that Beloit Corporation was a going concern during the relevant time period. We conclude that the two-year statute of limitations set forth in Wis. Stat. § 893.57 is applicable, because a breach of fiduciary duty claim involves an intentional tort. Thus, the applicable window of time is from June 7, 1997 through June 7, 1999, the date that Beloit Corporation filed for bankruptcy protection. In the complaint, the only significant occurrence alleged during this time frame was the disclosure of Beloit Corporation's losses from the Asia Pulp contracts in March 1998. However, Beloit Corporation was still a going concern at this time; thus, any claim asserted by Beloit Corporation's creditors for breach of fiduciary duty during this time frame is not actionable, and any claim on behalf of Beloit Corporation resulted in no injury to the corporation. Accordingly, 11 U.S.C. § 108(a) has no application to the claims made here.

¶ 41. While we invited the parties to address the matter of issue preclusion and the position taken by the court of appeals in this case, it is not necessary that we resolve this issue in order to reach our holding. Thus, we decline to delve into a lengthy analysis and discussion regarding issue preclusion here.

III

¶ 42. In summary, we conclude that, given the legislature's enactment of Wis. Stat. § 180.1704 and the prevailing Wisconsin case law regarding choice of law, Wisconsin law applies in this case. Primarily relying on the decisions of *Boyd v. Mutual Fire Ass'n,* 116 Wis. 155,

90 N.W. 1086 (1902), and *McGivern v. Amasa Lumber Co.*, 77 Wis. 2d 241, 252 N.W.2d 371 (1977), we further conclude that, in order for officers and directors to have a fiduciary duty to creditors, a corporation must be both insolvent and no longer a going concern. Because Beloit Corporation was a going concern during the applicable two-year period in which a claim could have been brought, we conclude that its officers and directors owed no duty to its creditors during that time. Given these conclusions, we do not need to address the court of appeals' holding regarding issue preclusion in this case.

*By the Court.*—The decision of the court of appeals is reversed.

¶ 43.  DAVID T. PROSSER, JR., J., did not participate.